**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2914
_____

In re: DANIEL F. FLYNN,

                                        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 10-cv-00577)
District Judge:  Honorable Joseph E. Irenas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 22, 2011

Before:  AMBRO, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 15, 2011)

_____

OPINION
_____

PER CURIAM

        Appellant Daniel Flynn appeals pro se from the order of the District Court

dismissing as moot Flynn's appeal from an order of the United States Bankruptcy Court,

and denying Flynn's motion to void the sale of his business.  We agree with the District

Court that the appeal was moot under 11 U.S.C. § 363(m), and will affirm.

I.

This appeal arises out of a Chapter 11 Bankruptcy involving Daniel Flynn, the former owner of several Burger King restaurant franchises. Flynn filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. On August 28, 2009, the Bankruptcy Court entered a consent order which established procedures for the sale of Flynn's business assets (the "Assets"). Notice of the proposed sale was served on creditors and parties in interest. On November 4, 2009, an order was entered approving a sale of the Assets to Cape-Atlantic Holdings LLC ("Cape").[1]

Thereafter, Flynn refused to execute the closing documents. The Bankruptcy Court then converted his case from a Chapter 11 to a Chapter 7 proceeding and appointed Brian S. Thomas as his Chapter 7 trustee. Shortly after his appointment, Thomas filed a motion for authorization to execute all necessary closing documents for the sale. Flynn, through counsel, objected to the motion on the grounds that he did not have any post-closing obligations to Burger King Corporation. Following a hearing on the motion, Burger King Corporation agreed to withdraw its request that Flynn have any continuing contingent liability following the sale. Finding that Flynn's objection was now moot, on December 22, 2009, the Bankruptcy Court entered an order authorizing Thomas to execute corporate resolutions and all documents necessary to effectuate the court-ordered

---

[1] Cape is comprised of a group of Flynn's former business partners (the "Shareholders").

2

closing (the "Order").

On January 3, 2010, Flynn appealed the Order to the United States District Court for the District of New Jersey, but did not seek a stay of the sale pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8005. On January 6, 2010, Thomas closed on the sale of the Assets to Cape. At closing, Thomas, as Flynn's trustee, received $278,000 from Cape. Cape assumed hundreds of thousands of dollars of liabilities and took over operation of the subject Burger King franchises.

On April 9, 2010, Thomas moved the District Court to dismiss Flynn's appeal on the grounds of mootness under 11 U.S.C. § 363(m). In response, Flynn filed a brief in opposition and a "Motion for an Order Voiding the Sale of the Business," arguing that the Order was not a valid order, that Thomas had no authority to remove Flynn as the managing owner of the franchises, and that Thomas arranged for the closing over Flynn's objections and did not provide a proper accounting of the sale. He also alleged bad faith on the part of the trustee and the Shareholders in connection with the sale. On June 15, 2010, the District Court denied Flynn's motion and granted Thomas's motion to dismiss the appeal on the grounds of mootness. Flynn timely appealed.

II.

We have jurisdiction under 28 U.S.C. § 158(d). We exercise plenary review over the District Court's legal conclusions but will reverse findings of fact only if clearly erroneous. See In re Marvel Entm't Grp, Inc., 140 F.3d 463, 470 (3d Cir. 1998).

3

III.

Sales in bankruptcy are governed by the provisions of 11 U.S.C. § 363 which,

*inter alia*, authorize the trustee, after notice and a hearing, to use, sell, or lease property

of a debtor's estate. 11 U.S.C. § 363(b)(1). Property of the estate includes "all legal or

equitable interests of the debtor in property as of the commencement of the case." 11

U.S.C. § 541(a)(1). Franchise agreements are the property of the estate as defined in 11

U.S.C. § 541; thus the sale thereof is governed by § 363. See Krebs Chrysler-Plymouth

v. Valley Motors, Inc., 141 F.3d 490, 497 (3d Cir. 1998); In re Rickels Home Ctrs., Inc.,

209 F.3d 291, 300 (3d Cir. 2000).

To promote certainty and finality with respect to such sales, as well as to

encourage parties to bid for assets in bankruptcy cases, 11 U.S.C. § 363(m) prohibits the

reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed

to obtain a stay of the sale. See Cinicola v. Scharffenberger, 248 F.3d 110, 121-22 (3d

Cir. 2001). The statute provides:

> The reversal or modification on appeal of an authorization … of a sale or
> lease of property does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in good
> faith, whether or not such entity knew of the pendency of the appeal, unless
> such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Although section § 363(m) is sometimes referred to as a "statutory

mootness" provision, we have rejected a per se rule and instead formulated a two-prong

test for whether an appeal of a sale or lease in bankruptcy is moot under § 363(m): (1) the

underlying sale or lease must not have been stayed pending appeal, and (2) reversing or

4

modifying the authorization to sell would affect the validity of the sale or lease. See

Cinicola, 248 F.3d at 128; Krebs, 141 F.3d at 499.

In this case, Flynn did not seek a stay; therefore the only issue is whether this appeal is now moot because vacation or modification of the Order would affect the validity of the sale. The Shareholders paid $278,000 for the sale of the franchises, and assumed several times that amount in liabilities at closing. Further, the Shareholders have been operating the Burger King franchises independently without Flynn since assuming the franchise agreements. Allowing a debtor to reject a franchise agreement after it has been assumed and sold has an impact on the validity of the sale because it "necessarily require[s] reversing the subsequent assumption and assignment of the underlying franchise." Krebs, 141 F.3d at 499. Thus, the remedy sought by Flynn, voidance of the sale, would affect the validity of the sale and is therefore impermissible under § 363(m).

Flynn argues that the Order was invalid because there was no good-faith purchaser and Flynn was not given the opportunity to entertain third-party offers of sale. He also contends that the sale was made in bad faith, without proper accounting. There is no evidence in the record to support the contention that Shareholders were not good-faith purchasers, or that Thomas or the Shareholders acted in bad faith.[2] Notice of the

---

[2] In his argument on appeal, Thomas makes the additional arguments to the Court that Thomas breached his fiduciary duty to Flynn and colluded with the Shareholders in structuring a sale that was not equitable to Flynn. We will not address these arguments as Thomas is barred from raising issues for the first time on appeal. United States v.

proposed sale was properly served on creditors and parties of interest. One third party submitted a bid for the Assets, but failed to finalize a contract within the time fixed by the Bankruptcy Court. The order approving the sale to Cape overruled the only objection to the proposed sale, which was filed not by Flynn, but by Hionis Holdings, LLC. Notably, the sale was approved before Thomas was appointed as trustee, and Thomas's motion to execute the closing documents sought only authorization to close on the sale already approved by the Bankruptcy Court. Flynn's only objection to the trustee's motion was to having any post-closing obligations to Burger King Corporation. These objections were resolved during a hearing on the motion, at which Flynn appeared. In short, there is no evidence of bad faith on the part of the trustee or the Shareholders in connection with the Order or sale.

## IV.

Because Flynn did not receive a stay of the sale pending appeal, the sale has since been closed, and the relief he seeks would impact the validity of that sale, the District Court correctly dismissed Flynn's appeal as moot under § 363(m). We will affirm.

---

Gilchrist, 215 F.3d 333, 339 (3d Cir. 2000). However, we note that nothing in the record supports Flynn's allegations of collusion or breach of fiduciary duty.